## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **JLK Construction, LLC,** | ) | **Case No. 23-50034** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| | ) | |
| | ) | |
| **JLK Construction, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 23-4031** |
| | ) | |
| **EIN Cap, Inc.,** | ) | |
| **Boost Capital Group, LLC,** | ) | |
| **Russell Naftali,** | ) | |
| **Justin Taneo,** | ) | |
| **Zac Bena, and** | ) | |
| **Jane and John Doe investors,** | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS

Plaintiff JLK Construction, LLC filed its second amended adversary complaint

[Dkt. No. 71] against several defendants, asserting ten counts under state and federal

law.  Defendants EIN Cap, Inc.; Russell Naftali; Justin Taneo; and the John and Jane

Doe investors (all represented by the same counsel) move for the court to dismiss with

prejudice counts one (for declaratory relief), two (for fraud), and three (for

racketeering).  Among other things, the movants argue JLK fails to state claims

under the relevant counts because the allegations for those counts do not enable the

court to draw the reasonable inference that the moving defendants are liable for the

misconduct JLK alleges. JLK resists and requests leave to file an amended complaint.

For the reasons set forth below, the court GRANTS the movants' motion to dismiss count one against defendants John and Jane Doe. The court, however, DENIES the movants' motion to dismiss count one against the other named defendants and DENIES the motion to dismiss counts two and three. The court further STRIKES the requests in the prayer for relief respecting count one that the court identifies below.

## BURDEN OF PROOF

The moving defendants bear the burden to establish that the challenged counts of JLK's adversary complaint are insufficient. *See Gill Constr., Inc. v. 18th & Vine Auth.*, No. 05-0608-CV-W-SOW, 2006 WL 8438149, at *1 (W.D. Mo. July 11, 2006) (assigning burden of proof to party requesting dismissal under Rule 12(b)(6)).

## BACKGROUND

The court derives the following background information from the second amended complaint and attached exhibits, statements counsel for the parties made at oral argument, and the record in this adversary proceeding and JLK's chapter 11 bankruptcy case.[1]

---

[1] The court derives facts from public records relating to JLK's bankruptcy and this adversary proceeding only to the extent those facts do not conflict with the complaint and only to provide relevant background information. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record.") (internal quotation marks omitted); *Z.J. v. Kansas City*, No. 4:15-cv-00621-FJG, 2016 WL 4126569, at *3 (W.D. Mo. Aug. 2, 2016) ("[S]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss.") (citation omitted).

Plaintiff JLK Construction, LLC is an excavation, dirt-moving, and concrete flatwork business.[2]  Defendant EIN Cap, Inc. is an entity that "provides working capital to businesses."[3]  JLK alleges Naftali is EIN Cap's president and CEO,[4] Taneo is EIN Cap's employee,[5] and John and Jane Doe are unidentified individuals or entities that invested money in EIN Cap.[6]  JLK alleges that defendant Boost Capital Group, LLC "solicit[s] . . . and broker[s]" transactions for EIN Cap and similar entities,[7] and that defendant Zac Bena is Boost's employee.[8]  JLK further alleges "each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other."[9]

After Boost did not answer or otherwise respond to the original complaint, the clerk of court entered default against Boost in this adversary proceeding on December 28, 2023.[10]  The court, therefore, will focus on whether JLK successfully pleads its causes of action against the defendants who filed the present motion to dismiss: EIN Cap, Naftali, Taneo, and the John and Jane Doe investors.[11]

---

[2] *See* Third Am. Disclosure Statement at 6, *In re JLK Construction, LLC*, No. 23-50034 (Bankr. W.D. Mo. Feb. 8, 2024), Dkt. No. 375.

[3] Defs.' Mot. Dismiss 1, Dkt. No. 34, Jan. 19, 2024. The cited pleading was filed in this adversary proceeding. All subsequent citations to the record in this order refer to pleadings filed in this adversary proceeding unless otherwise noted.

[4] Second Am. Compl. 3 ¶ 8, Dkt. No. 71, Apr. 18, 2025.

[5] *Id.* at 3 ¶ 9.

[6] *Id.* at 3 ¶ 10.

[7] *Id.* at 3–4 ¶ 11.

[8] *Id.* at 4 ¶ 12.

[9] *Id.* at 4 ¶ 14.

[10] Clerk's Entry Default, Dkt. No. 21, Dec. 28, 2023.

[11] Defs.' Mot. Dismiss First, Second, and Third Claims Relief Second Am. Compl. ("Defs.' Mot. Dismiss Second Am. Compl.") 1, Dkt. No. 76, May 2, 2025.

This adversary proceeding arises from a series of transactions JLK and EIN Cap entered from November 2021 to November 2022.[12]  The parties appear to agree that EIN Cap provided JLK with funds pursuant to contracts executed during that period.[13]  JLK further alleges that the parties' contracts required JLK to pay EIN Cap more funds than JLK received and to complete all payments between 60 and 115 business days after the dates EIN Cap advanced funds to JLK.[14]

The parties disagree about the correct characterization of their contractual relationship.  EIN Cap argues the parties' contracts were for EIN Cap's purchase of JLK's future monetary receipts[15]—a characterization that aligns with the language the contracts use to describe the parties' transactions.[16]  In contrast, JLK argues the contracts "were concealed loans rather than future receipt purchases."[17] JLK further alleges EIN Cap "intentionally misled [JLK] by placing on the first page of the Loan Documents a percentage rate of 20%."[18]  The contracts provide that the parties' agreement "shall be governed by and construed in accordance with the laws of the State of New York."[19]

---

[12] *See* Ex. 1 to Second Am. Compl. 1; Ex. 2 to Second Am. Compl. 1; Ex. 3 to Second Am. Compl. 1; Ex. 4 to Second Am. Compl. 1; Ex. 5 to Second Am. Compl. 1.

[13] *See* Second Am. Compl. 6–8 ¶¶ 23–34 (describing amounts borrowed and required repayment amounts); Defs.' Mot. Dismiss 2–3 (requesting dismissal of original complaint and explaining "EIN made an offer to provide capital" and "entered into a purchase agreement with [JLK]").

[14] Second Am. Compl. 6–7 ¶¶ 23–31.

[15] Defs.' Mot. Dismiss 3.

[16] *See generally* Exs. 1–5 to Second Am. Compl. (characterizing the transactions as "Purchase[s] and Sale[s] of Future Receivables").

[17] Second Am. Compl. 10 ¶ 45.

[18] *Id.* at 11 ¶ 50.

[19] Ex. 1 to Second Am. Compl. 6 § 4.5; Ex. 2 to Second Am. Compl. 9 § 4.5; Ex. 3 to Second Am. Compl. 9 § 4.5; Ex. 4 to Second Am. Compl. 9 § 4.5; Ex. 5 to Second Am. Compl. 9 § 4.5.

Between November 2021 and December 2022, JLK made several payments to EIN Cap pursuant to the terms of the parties' contracts.[20]  JLK alleges it made payments by allowing EIN Cap to withdraw repeated payments from JLK's bank account.[21]

JLK filed a chapter 11 bankruptcy petition with this court in February 2023.[22] EIN Cap asserts two proofs of claim against JLK's bankruptcy estate—a $36,670 proof of claim and a $50,275 proof of claim, both allegedly secured by JLK's "Accounts Receivable[s]."[23]

Several months later, JLK filed an adversary complaint against EIN Cap and others,[24] which the court dismissed without prejudice,[25] which JLK later amended,[26] then amended again to the present second amended complaint.[27] In the present complaint, JLK asserts ten counts.[28] In count one, JLK seeks a declaratory judgment that the contracts gave rise to disguised loans rather than sales of receivables.[29]  In count two, JLK asserts a claim for fraudulent concealment against EIN Cap and Boost.[30]  In count three, JLK seeks a civil judgment against all defendants except EIN Cap and the John and Jane Doe investors under the Racketeer Influence and

---

[20] *See generally* Exs. 6–11 to Second Am. Compl. (listing payment dates).
[21] Second Am. Compl. 11 ¶ 53.
[22] Voluntary Pet., *In re JLK Construction, LLC*, No. 23-50034 (Bankr. W.D. Mo. Feb. 13, 2023), Dkt. No. 1.
[23] EIN Cap, Inc.'s Proof Claim No. 33, May 30, 2023; EIN Cap, Inc.'s Proof Claim No. 34, May 30, 2023.
[24] Compl., Dkt. No. 1, Oct. 25, 2023.
[25] Order Granting Def.'s Mot. Dismiss and Granting Part Pl.'s Mot. Leave Amend, Dkt. No. 48, June 6, 2024.
[26] First Am. Compl., Dkt. No. 52, July 2, 2024.
[27] Second Am. Compl., Dkt. No. 71, Apr. 18, 2025.
[28] *Id.*
[29] *Id.* at 8–13 ¶¶ 37–61.
[30] *Id.* at 14–18 ¶¶ 62–82.

Corporate Organizations Act (RICO).[31]  In counts four, five, six, and seven, JLK seeks

avoidance and recovery of the transfers it made to EIN Cap as allegedly preferential

and fraudulent under federal and state avoidance laws.[32]  In count eight, JLK seeks

disallowance of EIN Cap's proofs of claim 33 and 34 under 11 U.S.C. § 502(d) for EIN

Cap's receipt and retention of allegedly avoidable transfers.[33]  Finally, in counts nine

and ten JLK requests disallowance of EIN Cap's claims as unenforceable criminally

usurious loans and seeks judgments voiding EIN Cap's purported UCC-1 liens.[34]

Movants ask the court to dismiss the first (declaratory relief), second (fraud),

and third (racketeering) counts of JLK's second amended complaint for failure to

state a claim under 12(b)(6) of the Federal Rules of Civil Procedure.[35]

Having summarized the relevant background information, the court turns to

the merits of the movants' motion to dismiss.

## ANALYSIS

Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, which

apply to this adversary proceeding under Rules 7008, 7009, and 7012 of the Federal

Rules of Bankruptcy Procedure, govern the present motion to dismiss the amended

complaint.  Rule 8(a)(2) requires a plaintiff to include in its complaint "a short and

plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  Additionally, when a plaintiff states a claim for fraud, Rule 9(b)

---

[31] *Id.* at 18–26 ¶¶ 83–114.
[32] *Id.* at 26–39 ¶¶ 115–175.
[33] *Id.* at 39–40 ¶¶ 176–180.
[34] *Id.* at 40–46 ¶¶ 181–214.
[35] Defs.' Mot. Dismiss Second Am. Compl. 1, 4–8.

requires that the plaintiff "state with particularity the circumstances constituting fraud," except that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R. Civ. P. 9(b).   To sufficiently plead fraud involving an alleged misrepresentation, the plaintiff "must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (requiring the plaintiff to allege the "who, what, where, when, and how" of the fraud (citation omitted)).

Rule 12(b)(6) empowers parties to file motions to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a complaint must include sufficient factual content to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A complaint states a facially plausible claim if the alleged facts provide the defendant with "'fair notice' of the nature of the claim, [and the] 'grounds' on which the claim rests."   *See id.* at 555 n.3 (construing Fed. R. Civ. P. 8(a)(2)).   Under this standard, the court should not dismiss a complaint under Rule 12(b)(6) if the facts pled enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint lends itself to "at least one plausible reading [that] 'allows the court to draw the reasonable inference that the defendant is liable,'" the court should not dismiss the complaint. *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers*

*Mfg. Corp.*, 122 F.4th 312, 316 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

The court takes a multistep approach to determining whether the complaint states a facially plausible claim. *See, e.g., Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (setting forth the three-step test). First, the court must determine the elements of each cause of action in the complaint. *Id.* Next, the court must consider all allegations together, accept them as true, and construe them in favor of the plaintiff. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (construing *Iqbal*, 556 U.S. at 678–79); *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) (requiring court to construe allegations in favor of plaintiff). But the court may disregard "formulaic recitation[s] of the elements of a cause of action," *Braden*, 588 F.3d at 594 (citations omitted), and need not accept any allegations that amount to mere "conclusory statements" or "legal conclusion[s] couched as [] factual allegation[s]." *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225–26 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "In addition, some factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim." *Braden*, 588 F.3d at 594 (citations omitted). Finally, the court must analyze the counts individually to determine whether the complaint states a viable claim for each element of that cause of action. *See, e.g., Santiago*, 629 F.3d at 130 (analyzing each count individually to "determine whether they plausibly give rise to an entitlement for relief") (citation omitted).

Applying this test, the court will analyze the counts at issue in JLK's adversary complaint below. For the reasons the court explained in its analysis of choice of law

in its order granting EIN Cap's motion to dismiss the original complaint,[36] to the extent the complaint implicates state law, the court analyzes the sufficiency of each count under New York law.

## I.     Declaratory Relief

In count one, JLK seeks a declaratory judgment against all defendants determining that the merchant cash advances (MCAs) it entered with EIN Cap are disguised loans and not sales of receivables. The defendants do not challenge whether JLK adequately pleads the transactions are loans. Instead, the defendants argue that (1) the declaratory relief should not be pled against any defendant except EIN Cap, and (2) JLK's prayer for relief stretches beyond the scope of its declaratory relief count.

### A.     JLK Can Bring its Declaratory Relief Count Against Defendants Naftali and Taneo but Not the John and Jane Doe Investors

Federal courts can issue declaratory relief pursuant to 28 U.S.C. § 2201. To determine whether the court has jurisdiction to grant declaratory relief, the court must decide whether there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Courts additionally consider whether (1) a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. Dist. Ct. of Polk Cty.*, 518 F.2d 1160, 1163–64 (8th

---

[36] Order Granting Def.'s Mot. Dismiss and Granting Part Pl.'s. Mot. Leave Amend 12–23.

Cir. 1975) (quoting Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941)); *see also Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) (applying the same additional factors).

The court determines that the declaratory relief count can be pled against Naftali and Taneo even though JLK did not allege they were parties to the contract. There is a substantial controversy between JLK, on the one hand, and Naftali and Taneo, on the other, because JLK brings its fraud and RICO counts against Naftali and Taneo. The fraud count is premised on the alleged mischaracterization of the MCA transactions, and the RICO count is premised on collection of an unlawful debt. The outcome of the declaratory relief count will clarify and settle legal relations and afford relief from uncertainty because whether the MCA transactions were loans will affect whether Naftali and Taneo mischaracterized the MCA transactions and whether the transactions are unlawful debts under the RICO statute. Thus, the outcome of the declaratory relief count will affect the resolution of these counts against Naftali and Taneo, and dismissal is inappropriate at this stage.

The court, however, dismisses the declaratory relief count against the Jane Doe and John Doe Investors. A declaratory relief count cannot stand alone against a defendant without a substantive claim for relief. Here, the declaratory relief count is the only count JLK asserts against the Jane Doe and John Doe Investors. Because JLK asserts no substantive claim for relief against the Jane and John Doe investors, the court GRANTS the movants' motion to dismiss this count against them.

In contrast, the court DENIES the movants' motion to dismiss the declaratory

relief count against Naftali and Taneo.

**B.    The Court Will Strike Paragraphs from the Prayer for Relief Inconsistent with the Declaratory Relief Count**

The court shares the movants' concerns that the prayer for relief includes several requests that exceed the scope of the allegations in the declaratory relief count.  Though the court concludes that the overbroad requests do not warrant dismissal of the declaratory relief count, the court strikes the paragraphs in the prayer for relief that exceed the scope of the substantive declaratory relief count under Rule 12(f) of the Federal Rules of Civil Procedure.

Generally, when determining a motion to dismiss under Rule 12(b)(6), the court confines its analysis of the pleading under Rules 8(a)(2) and (8)(a)(3) of the Federal Rules of Procedure to the substantive counts of the complaint, "and the demand for judgment [in the prayer or elsewhere] is not considered part of the claim for that purpose." *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011) (citing 5 *Wright & Miller's Federal Practice and Procedure* § 1255 (3d ed. 2004)).  Critically, however, the court may only award relief "founded on and consistent with the facts" pled. *See Reed v. Munn*, 148 F. 737, 743 (8th Cir. 1906) (citation omitted).  When a request for relief is inconsistent with the theory pled, the court may construe a Rule 12(b)(6) motion as a motion to strike under Rule 12(f), *see, e.g., Nelson v. Kansas Cnty. Ass'n Multiline Pool*, No. 21-CV-2374-JAR-GEB, 2021 WL 6196963, at *1 (D. Kan. Dec. 30, 2021) (construing 12(b)(6) motion to dismiss as motion to strike under 12(f)), and the court may, on its own, strike any part of a pleading that is "redundant, immaterial, impertinent, or scandalous." Fed.

11

R. Civ. P. 12(f).  A statement is immaterial if "lack[s] any logical connection with the consequential facts." *Immaterial, Black's Law Dictionary* (12th ed. 2024).

The defendants take issue with JLK's inclusion of the following requests in the prayer for relief: (1) that the defendants were doing business in Missouri unlawfully; (2) that the contracts are unenforceable or void; (3) that payments on the MCA transactions were made without consideration; and (4) that the MCA contracts are unlawful because they fail to disclose the applicable interest rate.[37]

These requests are clearly outside of the scope of the substantive declaratory relief count.  The declaratory relief count substantively alleges that the MCA transactions at issue were loans and not sales of receivables.  The above requests are neither founded on nor bear a logical connection to JLK's request for declaratory relief concerning the proper characterization of the transactions.  Consequently, the court construes the movants' Rule 12(b)(6) challenge to these requests as a motion to strike under Rule 12(f).  And because the above-listed requests are immaterial to JLK's count for declaratory relief, the court strikes the listed requests from JLK's prayer for relief.

## II.    Fraud

In count two, JLK asserts a fraudulent concealment cause of action, alleging EIN Cap, together with non-movant Boost, fraudulently engaged in "bait and switch tactics to induce Plaintiff to enter [MCA] transactions to which it did not agree."[38]

---

[37] Defs.' Mot. Dismiss Second Am. Compl. 2; Second Am. Compl. 47 ¶¶ 2–5.
[38] Second Am. Compl. 16 ¶ 73.

Specifically, JLK alleges EIN Cap's employee Taneo "knew and understood Plaintiff was seeking a loan, not a sale of receivables,"[39] and engaged in conduct intended to give JLK the impression that EIN Cap was offering a loan (for example, by "represent[ing] to Plaintiff that the interest rate chargeable for each loan was reasonable and lawful"[40]).   JLK further alleges that EIN Cap later "falsely substituted terms of a sale of future receipts,"[41] rather than contractual terms of a loan, without disclosing the substitution and while "discourag[ing] any review of the transaction document" by making "statements about funds being ready to deposit"[42] at the time of signing.

EIN Cap asks the court to dismiss this count, emphasizing that JLK made few changes to "correct the deficiencies [the court] outlined in the Opinion [dismissing the fraud count of JLK's first amended complaint]."[43]  EIN Cap argues JLK again fails to allege that EIN Cap or its agents made any misleading statements[44] that would give rise to a duty to disclose that EIN Cap was not offering the loans JLK requested.

For the reasons the court will explain, it DENIES EIN Cap's motion to dismiss this count.

As the court has previously explained, to state a claim for fraudulent concealment under New York law, a plaintiff must allege: "(1) that the defendant failed to meet its duty to disclose . . . (2) that the defendant had an intent to defraud

---

[39] *Id.* at 15 ¶ 70.
[40] *Id.* at 17 ¶ 75.
[41] *Id.* at 17 ¶ 76.
[42] *Id.* at 15–16 ¶ 70.
[43] Defs.' Mot. Dismiss Second Am. Compl. 8.
[44] *Id.*

or *scienter,* (3) there was reliance on the part of the plaintiff, and (4) damages." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993) (construing New York law); *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90–91 (2d Cir. 2005) (same). Though a fraudulent concealment theory does not require the plaintiff to specifically allege an affirmative misrepresentation, the plaintiff must nonetheless allege "the who, what, when, where and how of the alleged fraud" to survive a motion to dismiss under Rule 9. *See FDIC v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 383 (E.D.N.Y. 2015) (citations omitted) (analyzing fraudulent omission and requiring specificity "[n]o matter which theory of fraud a plaintiff seeks to pursue").

As to the first element of fraudulent concealment, the defendant's failure to meet a duty to disclose, a duty to disclose may arise in several circumstances, including "where the party has made a partial or ambiguous statement [regarding a material fact]," such that the party "g[ave] only half of the truth."  *Brass*, 987 F.2d at 150; *Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 192 F.3d 250, 258 (2d Cir. 1999) (requiring materiality under the first element).  A plaintiff sufficiently pleads fraudulent intent under the second element if the plaintiff alleges "facts giving rise to 'a strong inference of fraudulent intent'" such as "'allegations of a motive to deceive' and claims that the defendant withheld 'accurate information.'" *Kleeberg v. Eber*, 331 F.R.D. 302, 320 (S.D.N.Y. 2019) (quoting parenthetically *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748(DAB), 2006 WL 278138, at *7 (S.D.N.Y. Feb. 2, 2006)).  As to the third element, the "Plaintiff's reliance must be reasonable or justifiable." *Bermuda Container Line Ltd.*, 192 F.3d at 258 (internal

quotation marks omitted). Finally, "the element of damage includes a requirement that the plaintiff establish proximate causation." *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 489 (S.D.N.Y. 2013).

Though the court agrees that JLK added few new allegations in the second amended complaint, in light of the Eighth Circuit's recent instruction in *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 316 (8th Cir. 2024), that courts should not dismiss a complaint that lends itself to at least one plausible reading, even if it might not be the best one, the court determines JLK sufficiently pleads fraudulent concealment at this stage.

Drawing all reasonable inferences in JLK's favor, the court determines JLK sufficiently pleads EIN Cap failed to meet a duty to disclose under the first element of JLK's fraudulent concealment count. Taken together, JLK's inclusion of the allegation that Taneo "represented to Plaintiff that the interest rate chargeable for each loan was reasonable and lawful,"[45] coupled with the new allegations that Taneo understood Plaintiff sought loans,[46] sufficiently support the inference that Taneo's statements concerning reasonable interest rates were misleading, and that EIN Cap, through Taneo, withheld accurate information. Those factual allegations are sufficient at this stage to plead a duty to disclose EIN Cap's intent to bind JLK to sales rather than loans. And the allegation that Taneo "never disclosed the

---

[45] Second Am. Compl. 17 ¶ 75.
[46] *Id.* at 16 ¶ 71.

transaction was not a loan"[47] satisfies JLK's burden to plead that EIN Cap failed to meet its duty.

Under the second element, JLK sufficiently pleads facts supporting the inference of fraudulent intent by alleging EIN Cap, through Taneo, "knew and understood Plaintiff was seeking [] loan[s], not [] sale[s] of receivables"[48]; presented documents with a "signature line for Plaintiff's principal [] just below a line indicating a 20% rate,"[49] from which the court infers JLK is alleging EIN Cap intended JLK to wrongly interpret the 20% rate as an interest rate; "rush[ed] Plaintiff through the signing process without a review of the document[s] to conceal the true nature of the [transactions]"[50]; and "never disclosed the transaction[s] [were] not [] loan[s] as described during negotiations and prevented Plaintiff from conducting a review of the agreement[s] prior to execution to avoid its learning of the truth."[51]  These allegations support the inference that EIN Cap fraudulently intended (1) JLK to believe JLK was receiving reasonable loans as requested, and (2) to instead induce JLK to sign MCA Agreements that would financially harm JLK—and financially benefit EIN Cap— more than a reasonable loan.  These allegations are sufficient under Rule 9.

As to the reliance element, JLK sufficiently alleges reliance, whether reasonable or justifiable, at the pleading stage.  Specifically, JLK sufficiently pleads actual reliance by alleging JLK requested a reasonable loan but was never told it

---

[47] *Id.*
[48] *Id.* at 15 ¶ 70.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 16 ¶ 71.

would not receive a loan,[52] that Taneo told JLK's principal it was offering reasonable and lawful interest rates,[53] that JLK understood the 20% rate displayed on the transaction documents was an interest rate on the loan,[54] and that JLK was instead induced to sign the MCA agreements without reviewing them or knowing they were not for loan agreements[55] as JLK requested.  JLK sufficiently pleads its reliance was reasonable or justifiable by pleading the MCA's display of the 20% rate was near the signature line[56] (which supports the inference that the agreements give the false impression of a 20% interest rate), and that "in response to inquiry regarding interest rates, Plaintiff was informed they were to be reasonable and lawful"—not "that there would be no interest and why."[57]  The allegations that JLK had no prior experience with the defendants and no reason to distrust them,[58] and that JLK lacked familiarity with "banking, loans or merchant cash advances"[59] also supports the inference that JLK's reliance was reasonable or justifiable.

Finally, JLK pleads that EIN Cap's alleged fraud proximately caused JLK damage by alleging facts supporting the conclusion that JLK paid interest in excess of the rate it believed it was contracting to receive.  Specifically, JLK alleges that it believed it was receiving loans bearing 20% interest rates.[60]  JLK further alleges it received funds and made payments under five transactions, with imputed annual

---

[52] *Id.* at 18 ¶ 79.
[53] *Id.* at 17 ¶ 75.
[54] *Id.* at 16 ¶ 73.
[55] *Id.* at 15–16 ¶ 70.
[56] *Id.*
[57] *Id.* at 17 ¶ 77.
[58] *Id.*
[59] *Id.* at 15 ¶ 68.
[60] *Id.* at 16 ¶ 73.

interest rates as high as 600%.[61]  The court infers from these allegations that JLK suffered damages by paying interest in excess of the amounts it would have paid absent any alleged fraud.

Because the allegations in JLK's second amended complaint support at least one plausible reading that allows the court to draw the inference that the defendants are liable for the alleged fraud, the court DENIES the movants' motion to dismiss this count.

## III.   Racketeering

JLK alleges defendants Boost, Bena, Naftali and Taneo engaged in racketeering under 18 U.S.C. § 1962(c) and seeks trebled damages under 18 U.S.C. § 1964(c). Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

At the outset, the court notes that the movants once again propose eight factors JLK must allege to plead its RICO count citing *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 618 (M.D.N.C. 2014). These factors include the requirement that a RICO plaintiff allege the defendants used, in the operation of the enterprise, income derived from the collection of an unlawful debt. *Id.* The factors set out in *Dillon* come from *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985). As explained in the court's prior order, in *Durante* the court considered RICO

---

[61] *Id.* at 6–7 ¶¶ 23–32.

counts under §§ 1962(a), (c) and (d). Section 1962(a), among other things, creates a cause of action against defendants who use income in operation of a RICO enterprise. Here, JLK brings only a § 1962(c) action, which does not require that the defendants used income derived from the collection of an unlawful debt. Thus, the court will apply the same elements it did in its prior two orders.

To state a claim under § 1962(c), the plaintiff must plead: (1) that the defendant committed racketeering offenses through a pattern of racketeering activity or a collection of an unlawful debt, 18 U.S.C. § 1962(c); *see also United States v. Bennett*, 44 F.3d 1364, 1374 (8th Cir. 1995) (requiring the plaintiff to establish "that the defendant's participation was through a pattern of racketeering activity"); (2) that the defendant's conduct was the proximate cause of the plaintiff's injury, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); and (3) that the defendant participated in the conduct of an enterprise's affairs, *Bennett*, 44 F.3d at 1374.[62]

Here, JLK alleges the defendants engaged in collection of unlawful debts. In short, JLK alleges that the transactions it entered into with EIN Cap were disguised loans rather than sales of receivables, and because the interest rates on the loans far exceeded New York's usury cap, the defendants violated § 1962(c) by participating in collection of the alleged unlawful debts.

---

[62] A RICO plaintiff must also allege that the defendants engaged in interstate commerce. *Bennett*, 44 F.3d at 1374. The defendants argue JLK fails to allege that the defendants engaged in conduct affecting interstate commerce. But JLK clearly alleges facts demonstrating the out of state defendants engaged in interstate commerce by brokering, soliciting, and entering transactions with a Missouri entity.

In the court's most recent order, it concluded that JLK adequately pled the existence of an unlawful debt, and proximate cause. The court, however, dismissed the RICO count because JLK did not plead an enterprise distinct from the culpable persons and failed to allege that each defendant participated in the collection of an unlawful debt. Here, for the same reasons it previously concluded that JLK adequately pled an unlawful debt and proximate cause in its First Amended Complaint, the court again determines that JLK pled those elements in its Second Amended Complaint.

Thus, the court will focus on two issues: (1) whether JLK pleads that EIN Cap is distinct from the alleged culpable persons and (2) whether JLK pleads that each movant participated in the collection of unlawful debts. The court concludes that JLK adequately pleads both and, therefore, DENIES the movants' motion to dismiss the RICO count as to defendants Naftali and Taneo.

## A.    JLK Pleads an Enterprise Distinct from the Culpable Persons

As previously stated, RICO requires plaintiffs plead that each defendant conducted the affairs of an enterprise. *Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir. 1982) ("The RICO Act proscribes conduct in which one party . . . acts upon . . . the enterprise.") (internal quotation marks omitted). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Additionally, an associated-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the

20

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

At the outset, the court must determine whether JLK is attempting to plead an associated-in-fact enterprise. Although JLK explicitly alleges that EIN Cap is the enterprise,[63] JLK also includes allegations making it unclear whether it actually intended to allege an associated-in-fact enterprise made up of all or some of the defendants. Specifically, JLK states that Bena, Boost, Naftali, and Taneo "are associated in fact and through relations of ownership for the common purpose[] of collecting on an unlawful debt."[64] JLK's counsel did not commit to whether JLK intended to allege an associated-in-fact enterprise, stating that "I don't conceptually have a problem with an association,"[65] and "I don't have a problem with repleading [the RICO count] as an association."[66] Counsel then explained that JLK is attempting to get past the pleading stage one way or another and "[i]f it's by an association, so be it."[67]

But because JLK explicitly alleged EIN Cap is the enterprise, the court will not construe the complaint to allege an associated-in-fact enterprise. JLK also clearly alleges that EIN Cap is a New York corporation,[68] and a corporation can be an enterprise under the RICO statute. 18 U.S.C. § 1961(4). Furthermore, JLK's allegation that EIN Cap is the enterprise appears consistent with its choice to not

---

[63] Second Am. Compl. 24 ¶ 104.
[64] *Id.* at 24–25 ¶ 107.
[65] Tr. Hr'g Mot. Dismiss Adversary Proceeding 32:3–4, Dkt. No. 86, July 14, 2025.
[66] *Id.* at 32:5–6.
[67] *Id.* at 33:5.
[68] Second Am. Compl. 3 ¶ 7.

name EIN Cap as a defendant to the RICO count because the enterprise to a RICO cause of action cannot simultaneously be a RICO defendant. Thus, in analyzing the sufficiency of JLK's RICO allegations, the court will assume EIN Cap—not an association—is the enterprise.

The court must next determine whether JLK alleges that EIN Cap, the enterprise, is distinct from the alleged culpable persons, Boost, Bena, Naftali, and Taneo.

A RICO plaintiff, in addition to alleging an enterprise, must also identify the defendants as "culpable persons" distinct from the enterprise, *Bennett*, 685 F.2d at 1061; *see also United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996) ("The enterprise must be distinct from the person named as the RICO defendant."), where the "culpable persons" are the people or entities that conduct the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("*[S]ome* part in directing the enterprise's affairs is required."); *see also United Food & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853–57 (7th Cir. 2013) (holding that plaintiff failed to allege that defendants conducted the affairs of the enterprise and upholding dismissal of RICO claims).

While a corporation can be a culpable person, a RICO plaintiff cannot subvert the requirement to plead a distinct enterprise and culpable persons by bringing a RICO cause of action against a corporation and alleging it was part of an associated-in-fact enterprise consisting of itself and its officers and employees. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001) (explaining the person-

22

enterprise distinction); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself."). Thus, a corporation cannot generally be liable under the RICO statute for operating itself.

JLK alleges EIN Cap is the enterprise[69] and alleges Boost, Bena, Naftali, and Taneo are culpable persons.[70] JLK alleges that Boost, Bena, Naftali, and Taneo engaged in a variety of activities in support of EIN Cap's scheme to create and collect unlawful debts. Specifically, JLK alleges that Taneo acted as "an employee and agent of EIN CAP"[71] and alleges that Naftali "is the founder, CEO and president of EIN CAP."[72] JLK in turn alleges Boost brokered the MCA transactions at issue through their agent Bena.[73]

In its two prior complaints, JLK included several allegations describing a variety of relationships among the defendants that could potentially blur the distinctiveness between EIN Cap and the alleged culpable persons. In its two prior dismissal orders, the court expressed concern that these allegations could prevent JLK from adequately pleading its RICO count. Nevertheless, JLK once again includes similar allegations in this complaint. In short, through a series of allegations in paragraphs 14, 15, 16 and 17, JLK vaguely describes among other things, an agency,

---

[69] *Id.* at 24 ¶ 104.
[70] *Id.* at 24 ¶¶ 101–03.
[71] *Id.* at 3 ¶ 9.
[72] *Id.* at 3 ¶ 8.
[73] *Id.* at 3–4 ¶¶ 11–12.

employee, alter-ego and/or co-conspirator relationship between all of the defendants. These allegations are troubling to the court, much like they were when the court read them in JLK's two prior complaints.

The court, however, must read the complaint in a light most favorable to the plaintiff, and for the following three reasons, the court will disregard the allegations in paragraphs 14, 15, 16, and 17 for the purpose of determining whether JLK pled a distinct enterprise and culpable persons. First, the allegations are so equivocal that they are substantively meaningless. Second, they contradict more specific allegations describing the relationships among the defendants found elsewhere in the complaint. And third, some of the allegations include unsupported conclusions that can be ignored under a Rule 12(b)(6) analysis.

To start, the court will recite the text of the paragraphs at issue. Starting in the background section of the complaint, JLK alleges that each defendant acted as each other defendant's "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer" of each other defendant.[74] Then JLK says Boost "was and is a broker for EIN CAP acting as EIN CAP's agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other" and that Boost "acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture."[75] JLK says that Taneo "was and is acting as EIN CAP's and THE JANE DOE AND JOHN DOE INVESTORS' agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer of the other" and "acted within the course and scope of such agency,

---

[74] *Id.* at 4 ¶ 14.
[75] *Id.* at 4 ¶ 15.

employment, alter-ego and/or in furtherance of the joint venture."[76] Finally, JLK

alleges that EIN Cap acted as the Jane Doe and John Doe Investors' "agent, servant,

employee, co-conspirator, alter-ego and/or joint-venturer of the other" and "acted

within the course and scope of such agency, employment, alter-ego and/or in

furtherance of the joint venture."[77]

Notably, JLK does not commit to any single relationship it lists in these

allegations. Instead, JLK uses "and/or" to say that any one of these relationships or

a combination of them could exist between the defendants. For example, under the

allegations in paragraph 14, JLK could be suggesting that EIN Cap was both an alter-

ego and an employee of the Jane Doe and John Doe Investors. But, of course, if one of

these relationships existed, then it is implausible—perhaps impossible—that the

other relationship could exist. Furthermore, under these allegations one defendant

could be simultaneously the employer and employee of another defendant. For

example, Naftali could both be Taneo's employee and Taneo could be Naftali's

employee. These examples demonstrate the absurdity of these allegations, and these

allegations, when considered in their entirety, do not describe any meaningful

relationship between or among the defendants.

Furthermore, these allegations appear to contradict more specific allegations

made elsewhere in the complaint, including in the background section. Indeed, JLK

makes more specific allegations describing the relationships between the defendants

but obscures these allegations by alleging that each defendant acted as each other

---

[76] *Id.* at 4–5 ¶ 16.
[77] *Id.* at 5 ¶ 17.

defendant's "agent, servant, employee, co-conspirator, alter-ego and/or joint-venturer" of each other defendant.[78] For example, JLK alleges that Naftali "is the founder, CEO, and president of EIN CAP."[79] But if you take JLK's allegations in paragraph 14 literally, then EIN Cap could be Naftali's employee or alter-ego. Similarly, JLK alleges Taneo is an employee and agent of EIN Cap,[80] but under the allegations in paragraph 14, Taneo could be Boost's employee. Because the more specific allegations appear to be consistent with other allegations in the complaint, the court is inclined to ignore the vague and inarticulate allegations in paragraphs 14, 15, 16, and 17.

Finally, the court can ignore some of the allegations in paragraphs 14, 15, 16, and 17 because they amount to unsupported conclusions that the court can disregard under a Rule 12(b)(6) analysis. For example, the question of whether an agency or alter-ego relationship exists is a fact-intensive one, that would likely require JLK to plead additional facts beyond the mere assertion that the relationship existed between two of the defendants. Here, in paragraphs 14, 15, 16, and 17, JLK does not clearly assert the existence of any specific relationship, and even if it did, those relationships are not sufficiently supported by facts pled elsewhere in the complaint to meet Rule 12(b)(6)'s pleading standards.

In sum, the court reads the complaint in a light most favorable to the plaintiff and concludes that JLK pleads an enterprise distinct from the alleged culpable

---

[78] *Id.* at 4–5 ¶¶ 14–17.
[79] *Id.* at 3 ¶ 8.
[80] *Id.* at 3 ¶ 9.

persons, despite the allegations in 14, 15, 16, and 17.

### B.    JLK Pleads that Each Defendant Participated in the Collection of an Unlawful Debt

Next, the court must consider whether JLK pleads each RICO defendant committed racketeering offenses and participated in the conduct of the enterprise's affairs. To do this, JLK must allege the culpable persons participated in the collection of an unlawful debt. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985) (citing 18 U.S.C. §§ 1962(a) and (c)).  But JLK does not need to allege a pattern of racketeering activity and needs only to allege the defendants participated in collecting a single unlawful debt. *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020) ("RICO offenses may be predicated on a *single instance* of collection of an unlawful debt.") (emphasis added). The plaintiff also does not need to allege that each culpable person explicitly collected payment on the unlawful debt. Instead, courts have liberally construed participation in the collection of unlawful debt to include any "single act which would tend to induce another to repay on an unlawful debt." *United States v. Eufrasio*, 935 F.2d 553, 576 (3d Cir. 1991) (citing *United States v. Pepe*, 747 F.2d 632, 673–75 (11th Cir. 1984)); *Golden Foothill Ins. Servs., LLC v. Spin Cap., LLC*, 24-cv-8515 (AS), 2025 WL 2402616, at *10 (S.D.N.Y. Aug. 19, 2025) (concluding allegations that defendants "induc[ed] plaintiffs to take out a loan to cover the balance of the agreements" satisfied burden to plead "the defendant[s] aided collection of the debt *in some manner*") (quoting *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986)). Thus, courts have held that an actual exchange of money is not required to plead participation in the collection of an unlawful debt. *Eufrasio*, 935

27

F.2d at 576; *see, e.g.*, *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 148 (3d Cir. 2016) (determining that repossession of collateral can constitute collection of an unlawful debt); *Brice v. Haynes Invs., LLC*, 548 F. Supp 3d 882, 894 (N.D. Cal. 2021) (determining that evidence RICO defendants created a predatory lending scheme could be sufficient for a jury to find that the defendants participated in the collection of an unlawful debt).

The court concludes that JLK pleads sufficient facts against Naftali and Taneo to support its RICO count at this stage of the litigation. As previously explained, the defendants do not contest that JLK successfully pleads that the MCA transactions were loans, and in the court's most recent order, it concluded that JLK adequately pled that the MCA transactions at issue were loans with interest rates exceeding more than twice the legal interest rate in New York. Thus, JLK pleads the existence of unlawful debts. The defendants instead argue that JLK does not directly connect any of the culpable persons' alleged conduct to the collection of an unlawful debt.

The issue, therefore, is whether JLK adequately pleads that Naftali and Taneo, as alleged culpable persons, participated in the collection of an unlawful debt. To plead participation in the collection of an unlawful debt, JLK does not need to specifically plead that each culpable person collected payment on the unlawful debt. Rather, as previously stated, JLK need only allege that the culpable persons engaged in activity that could induce JLK to make payments on an unlawful debt.

JLK alleges that Naftali "founded EIN CAP on or about May 2016 and has an ownership interest in EIN CAP and is and was the president and CEO at all relevant

times."[81] JLK also alleges that Naftali "continues to exercise authority over the Enterprise and has authority to execute contracts on behalf of the Enterprise"[82] and that "[d]uring the relevant time period, NAFTALI controlled the transactions within the Enterprise."[83] JLK alleges that all defendants, including Naftali and Taneo, "engaged in a common goal of soliciting, funding, servicing, and collecting upon usurious loans,"[84] and "worked together for [] several years and have enjoyed the benefits of construing loans as a purchase [sic] of future receivables in order to avoid New York State usury laws."[85] JLK also alleges that Taneo encouraged JLK to enter the transaction by calling JLK's principal to encourage him to sign the contract documents.[86] JLK also makes several allegations related to EIN Cap withdrawing funds via ACH debit from JLK's bank account.

Between Naftali and Taneo, JLK alleges significant involvement in soliciting and creating multiple unlawful loans. Further, JLK alleges that payment on these MCA transactions was set up through ACH debit based on the terms of the contracts. Thus, any efforts to induce JLK to enter into the transactions including the ACH debit provisions could be construed as efforts to induce payment on an unlawful debt.

For these reasons, the court, after drawing all reasonable inferences in JLK's favor, is satisfied that the complaint lends itself to at least one plausible reading of JLK's RICO count to support a determination that Naftali and Taneo participated in

---

[81] *Id.* at 24 ¶ 105.
[82] *Id.*
[83] *Id.*
[84] *Id.* at 24–25 ¶ 107.
[85] *Id.* at 25 ¶ 108.
[86] *Id.* at 15–16 ¶ 70.

the collection of an unlawful debt. The court, therefore, DENIES the defendants'
motion to dismiss.

## CONCLUSION

For the reasons explained above, the court GRANTS the movants' motion to
dismiss count one against John and Jane Doe investors but DENIES the movants'
motion to dismiss count one as to all other defendants. The court strikes paragraphs
2, 3, 4, and 5 in JLK's prayer for relief. The court DENIES movants' motion to dismiss
counts two (fraud) and three (racketeering). The remaining movants have 30 days
(until November 14, 2025) to answer the surviving portions of the second amended
complaint.

IT IS SO ORDERED.


Dated: 10/15/2025                              /s/ Brian T. Fenimore
                                               United States Bankruptcy Judge